UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

UNITED STATES OF AMERICA,

          Plaintiff,                          Case Number 17-20018

v.                                                Honorable David M. Lawson

MICHAEL GOODWIN,

          Defendant.
_____/

## ORDER DENYING MOTION FOR COMPASSIONATE RELEASE

Defendant Michael Goodwin has filed a motion asking the Court to reduce his prison sentence to time served under the compassionate release provision of 18 U.S.C. 3582(c)(1)(A)(i), as amended by section 603(b)(1) of the First Step Act of 2018, Pub L. 115-391, 132 Stat. 5194, 5239. Because he has not shown that "extraordinary and compelling reasons warrant such a reduction," as section 3582(c)(1)(A)(i) requires, his motion will be denied.

I.

Defendant Michael Goodwin pleaded guilty to charges of possessing a firearm after having been convicted of a felony and possessing a firearm during and in furtherance of a drug crime. On October 17, 2017, he was sentenced to 24 months on the felon-in-possession count and a consecutive term of 60 months in prison on the other firearm charge. He has served approximately 33 months or around 40% of that cumulative 84-month term, and he presently is confined by the Bureau of Prisons at FCI Elkton, a low security facility that houses more than 2,100 inmates. Public records of the BOP indicate that the defendant is scheduled to be released from prison on November 29, 2023.

On July 6, 2020, Goodwin filed, through his appointed counsel, his motion seeking compassionate release under 18 U.S.C. § 3582(c)(1)(A), as amended by the First Step Act of 2018.

In his motion, Goodwin argues that he is qualified for release based on his medical conditions including asthma and his body mass index (BMI), which he characterizes as "bordering on obesity." The Court appointed counsel and set deadlines for both sides to complete their briefing on the motion. The government filed a response in opposition, and the defendant has filed a reply.

The most recent data disclosed by the BOP indicates that there are no active coronavirus cases at the Elkton facility among inmates but two active cases among staff, as well as 985 inmates and 51 staff who previously were diagnosed and who now have recovered from the disease. Nine inmates reportedly have died during the outbreak. *See* https://www.bop.gov/coronavirus/.

## II.

As a general rule, "a federal court 'may not modify a term of imprisonment once it has been imposed.'" *United States v. Alam*, 960 F.3d 831, 832 (6th Cir. 2020) (quoting 18 U.S.C. § 3582(c)). "But that rule comes with a few exceptions, one of which permits compassionate release." *Ibid.* "The request may come through a motion in federal court filed by the Director of the Bureau of Prisons. 18 U.S.C. § 3582(c)(1)(A). Or it may come through a motion filed by the inmate after he has 'fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the [prisoner]'s behalf' or after 'the lapse of 30 days from the receipt of such a request by the warden of the [prisoner]'s facility, whichever is earlier.'" *Ibid.* (quoting 18 U.S.C. § 3582(c)(1)(A)).

Upon a proper motion via either avenue, the Court may, "[a]fter 'considering the factors set forth in section 3553(a) . . . reduce the prisoner's sentence if it finds that 'extraordinary and compelling reasons warrant such a reduction' or if the '[prisoner] is at least 70 years of age,' has 'served at least 30 years,' and meets certain other conditions." *Ibid.* (quoting 18 U.S.C. § 3582(c)(1)(A)(i), (ii)). Goodwin relies on subparagraph (i) of the statute. Under that provision,

the Court can order a reduction of a sentence, even to time served, *first*, "after considering the factors set forth in section 3553(a) to the extent that they are applicable," *second*, if "extraordinary and compelling reasons warrant such a reduction," and *third*, if the "reduction is consistent with applicable policy statements issued by the Sentencing Commission." 18 U.S.C. § 3582(c)(1)(A)(i). The Sentencing Commission's policy statement is found in U.S.S.G. § 1B1.13, which simply recites the statute. The commentary adds gloss, which does not have the force of law. *United States v. Havis*, 927 F.3d 382, 386 (6th Cir.), *reconsideration denied,* 929 F.3d 317 (6th Cir. 2019) (en banc) (holding that the "commentary has no independent legal force — it serves only to *interpret* the Guidelines' text, not to replace or modify it").

Goodwin's showing on the second element — extraordinary and compelling reasons — is insufficient, so it is unnecessary to discuss the other two. To establish extraordinary and compelling reasons for the relief he requests, Goodwin points to the conditions of his physical health, arguing that he is vulnerable to complications if he were to contract COVID-19. And he is understandably concerned about being infected with the coronavirus. "The COVID-19 virus is highly infectious and can be transmitted easily from person to person. COVID-19 fatality rates increase with age and underlying health conditions such as cardiovascular disease, respiratory disease, diabetes, and immune compromise. If contracted, COVID-19 can cause severe complications and death. Because there is no current vaccine, the Centers for Disease Control and Prevention ("CDC") recommends preventative measures to decrease transmission such as physical distancing, mask wearing, and increasing focus on personal hygiene such as additional hand washing." *Wilson v. Williams*, 961 F.3d 829, 833 (6th Cir. 2020). "The COVID-19 pandemic is extraordinary and unprecedented in modern times in this nation. It presents a clear and present

danger to free society for reasons that need no elaboration." *United States of America v. Ortiz*, No. 16-439, 2020 WL 3640582, at *2 (S.D.N.Y. July 6, 2020).

Moreover, "the crowded nature of federal detention centers presents an outsize risk that the COVID-19 contagion, once it gains entry, will spread. And, realistically, a high-risk inmate who contracts the virus while in prison will face challenges in caring for himself. For these reasons, in the past months, numerous [federal] courts . . . have ordered the temporary release of inmates held in pretrial or presentencing custody and, in more limited instances, the compassionate release of high-risk inmates serving federal sentences." *Ortiz*, 2020 WL 3640582, at *2 (collecting cases; footnotes omitted).

Goodwin argues that compassionate release is warranted based on his asthma and his overweight condition. The defendant contends that those conditions increase the risk to his health posed by the ongoing coronavirus pandemic.

The government concedes that the request for release has been exhausted properly, so that threshold requirement for relief has been satisfied. However, the defendant has not advanced sufficiently compelling circumstances to warrant a sentence reduction based on his diagnosed medical conditions, none of which comprise recognized serious risk factors for coronavirus infection.

It is widely recognized and publicly acknowledged that persons with asthma and those who are seriously obese face an increased risk of severe consequences from potential COVID-19 infection. *United States v. Lassister*, No. 17-232, 2020 WL 3639988, at *4 (D. Md. July 6, 2020) ("The risk factors include age (over 65); lung disease; asthma; chronic kidney disease; serious heart disease; obesity; diabetes; liver disease; and a compromised immune system.") (citing Coronavirus Disease 2019 (COVID-19), People Who Are At Risk for Severe Illness, Centers for

Disease Control & Prevention (June 25, 2020), https://bit.ly/2WBcB16). The CDC recognizes "moderate to severe" asthma as a risk factor for COVID-19 infection, but the defendant's medical records do not indicate that his asthma meets either of those criteria. *See* CDC, Risk Factors: Certain Medical Conditions, https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html; *see also* WedMD: What is Asthma?, https://www.webmd.com/asthma/what-is-asthma ("3. Moderate persistent asthma. Symptoms three to six times a week. Nighttime symptoms three to four times a month. Asthma attacks might affect activities. 4. Severe persistent asthma. Ongoing symptoms both day and night. You have to limit your activities."). The defendant's records indicate that he has a history of asthma, but also noted that in September 2019 his inhaler prescription had not been refilled in more than a year, and the defendant denied any nighttime coughing or wheezing, and disclaimed any respiratory difficulties during exercise. Medical Report dated Sept. 17, 2019, ECF No. 56-2, PageID.459. On August 14, 2020, the defendant filed a supplemental brief in which he asserts that his asthma inhaler was refilled three times in the interim between September 2019 and that date, and that he recently was prescribed a second inhaler by a prison physician. However, the reply was not accompanied by any medical records indicating that the defendant's asthma symptoms were more severe than noted during prior exams, or that his condition qualifies as "moderate" or "severe" asthma as those terms medically are understood. The defendant also contends that his use of an inhaler alone is an indicator that his condition "may be more severe," but use of an asthma inhaler is not among the circumstances presently recognized by the CDC as triggering a risk of more severe consequences from coronavirus infection.

The defendant's weight also is not a significant risk factor because his recorded BMI is only 28, which is in the "overweight" category and does not exceed the threshold BMI of 30, which

qualifies as "obese." *See* WebMD: What is Body Mass Index (BMI) and How Do You Calculate It?, https://www.webmd.com/diet/obesity/qa/what-is-body-mass-index-bmi-and-how-do-you-calculate-it. Although the CDC has recognized obesity as a risk factor, a BMI short of the obesity threshold is not recognized as presenting a seriously elevated risk for complications from COVID-19.

The situation at FCI Elkton certainly is dire, and the government concedes that the outbreak there has been "among the worst" in all federal prisons. The government's position that the defendant is at low or no risk based on prophylactic measures taken by BOP to address the pandemic is not reassuring in the context of the ongoing presence of active infections among inmates there, along with the recent rapid acceleration of the pandemic among the public at large. Moreover, the BOP's admitted failure to implement any comprehensive prophylactic testing program calls into doubt the undoubtedly optimistic figures that it has reported. *Wilson*, 961 F.3d at 849 ("The flaws inherent in the half-measures employed by the BOP are amplified by the BOP's inability to test inmates for COVID-19. At the time of the preliminary injunction, the BOP had only obtained 75 tests for roughly 2,500 inmates at Elkton. The fact that more than two-thirds of those tests came back positive suggests an extremely high infection rate, but the BOP's testing shortage ensured that the record would not reflect the precise figure.") (Cole, Chief J., concurring); *see also United States v. Campbell*, No. 03-4020, 2020 WL 3491569, at *9 (N.D. Iowa June 26, 2020) ("As of June 23, 2020, no cases of COVID-19 at Yankton FPC had been reported. However, without knowing whether the BOP is actively testing inmates and staff members for COVID-19 at Yankton FPC, the lack of active confirmed cases does not mean COVID-19 is not present at the facility. Nor does it mean there will not be a future outbreak at the facility. As the Government acknowledges, despite extensive measures to prevent transmission, more federal inmates will

inevitably contract COVID-19 going forward."). The government's recounting of measures taken by BOP to address the pandemic also is markedly less impressive in this case considering that those measures demonstrably were ineffective at preventing an outbreak that, so far, has involved more than 1,000 infected inmates and staff, with nine fatalities.

The defendant also argued in his supplemental brief that the risk of infection is higher than previously thought, citing published news reports indicating that airborne viable virus has been detected during scientific studies of environmental air in hospital patient rooms. But that only confirms what already is apparent based on the history of the epidemic that has raged at Elkton: there is a significant risk of infection in the defendant's living situation. This "new evidence," however, does not alter the conclusion that the defendant has not made a compelling argument that he is at unusually increased risk of severe consequences if he is infected. Moreover, although, as the government admits, the outbreak at Elkton has been among the worst in the federal prison system, the most current figures indicating no active cases among inmates suggest that the BOP for now at least, and at long last, has succeeded in bringing the outbreak under control, and that the risk of infection substantially has diminished.

As to his own individual circumstances, considering the most recent information available to the Court, the defendant has not advanced sufficient information to make a persuasive case that extraordinary and compelling circumstances warrant a sentence modification, based on any present risk to his health.

None of this is to minimize the seriousness of the coronavirus pandemic or the alarming rapidity of its spread within federal prisons. But the pandemic is a global phenomenon and some risk is inherent no matter where Goodwin resides, either at home or in prison. He asserts that his risk would be lower at home, but he has not put forth any convincing evidence to demonstrate that

he is at an especially elevated risk of harm in the present situation of confinement. And Michigan has a significant number of confirmed COVID-19 cases. Goodwin has not demonstrated "extraordinary and compelling reasons" based on his physical health, and therefore he has not shown justification to reduce his sentence to time served.

### III.

Goodwin has exhausted his administrative remedies, but he has not demonstrated that compassionate release under 18 U.S.C. 3582(c)(1)(A)(i) is justified.

Accordingly, it is **ORDERED** that the defendant's motion for compassionate release (ECF No. 54) is **DENIED**.

s/David M. Lawson<br>
DAVID M. LAWSON<br>
United States District Judge

Dated: August 18, 2020